UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MELISSA BROWN**, an individual,

    *Plaintiff*,

v.

**AVON MACHINING, LLC**, a Delaware limited liability company, **AUXO INVESTMENT PARTNERS, LLC**, a Delaware limited liability company, **TODD THOMPSON**, an individual, and **BRANDON WALSH**, an individual,

    *Defendants.*

Case No.
Hon:

**JURY TRIAL DEMANDED**

---

R.J. Cronkhite (P78374)
Cronkhite Counsel PLLC
370 E. Maple Rd, Third Floor
Birmingham, MI 48009
T: (248) 220-6031
F: (248) 245-2555
rj@cronkhitelaw.com
*Attorneys for Plaintiff*

---

**COMPLAINT AND JURY DEMAND**

Plaintiff Melissa Brown ("**Brown**"), through her attorneys Cronkhite Counsel PLLC, files her Complaint and Jury Demand, stating as follows:

**NATURE OF THE DISPUTE**

1. This federal question suit involves Defendants' conspiracy to terminate—and Defendants' ultimate termination of—Brown in violation of Federal and Michigan law,

including the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* (the "**FMLA**"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (the "**ADA**"), and Michigan's Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq.* (the "**PDCRA**")

## PARTIES

2. Plaintiff Melissa Brown is an individual residing in the City of Macomb, Macomb County, Michigan.

3. Defendant Avon Machining, LLC ("**Avon**") is a Delaware limited liability company with its principal place of business located in, and conducting business in, Shelby Township, Macomb County, Michigan.

4. Defendant Auxo Investment Partners, LLC ("**Auxo**") is a Delaware limited liability company with its principal place of business located in, and conducting business in, Grand Rapids, Kent County, Michigan.

5. Upon information and belief, Defendant Todd Thompson ("**Thompson**") is an individual resident Kalamazoo, Kalamazoo County, Michigan.

6. Upon information and belief, Defendant Brandon Walsh ("**Walsh**") resides in Kent County, Michigan.

7. Thompson is jointly employed by Auxo and Avon.

8. Thompson currently serves as Avon's Chief Executive Officer.

9. Walsh is jointly employed by Auxo and Avon.

2

10. Walsh is formally Auxo's Vice President but also provides services on behalf of Avon.

## JURISDICTION AND VENUE

11. On April 30, 2024, Plaintiff timely filed a charge of employment discrimination on the basis of disability against Avon and Auxo with the Equal Employment Opportunity Commission ("**EEOC**") within 300 days of the commission of the unlawful employment practices alleged in this claim.

12. In connection with Avon, Plaintiff received notification of the right-to-sue letter from the EEOC on May 7, 2024, and has filed this complaint within 90 days of receiving the EEOC's notice of the right to sue.

13. In connection with Auxo, Plaintiff received notification of the right-to-sue letter from the EEOC on May 15, 2024, and has filed this complaint within 90 days of receiving the EEOC's notice of the right to sue.

14. This Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. § 1331: federal questions arise under the FMLA and the ADA.

15. With respect to any claims asserted herein that fall outside of the Court's original subject matter jurisdiction, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 because all of the claims asserted arise out of a common nucleus of operative facts and form part of the same case or controversy.

16. This Court has personal jurisdiction over Defendant Thompson pursuant to MCL 600.701 and MCL 600.705 because Thompson is domiciled in, employed in, regularly transacts business within, and entered into a contract for employment services to be rendered in the State of Michigan.

17. This Court has personal jurisdiction over Defendant Walsh pursuant to MCL 600.701 and MCL 600.705 because Thompson is domiciled in, employed in, regularly transacts business within, and entered into a contract for employment services to be rendered in the State of Michigan.

18. This Court has personal jurisdiction over Defendants Avon and Auxo pursuant to MCL 600.711 because both Avon and Auxo carry on a continuous and systematic part of their general business within the State of Michigan.

19. This Court also has personal jurisdiction over all Defendant Thompson pursuant to MCL 600.705, and over Avon and Auxo pursuant to MCL 600.715, because each Defendant committed torts within the State of Michigan and the consequences of those torts also occurred within the State of Michigan, as set forth herein.

20. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

**GENERAL ALLEGATIONS**

21. In April of 2018, Avon hired Brown as its Human Resources Manager.

22. Director of Operations.

4

23. As Human Resources Manager, Brown was also responsible for supervising Avon's Human Resources Department.

24. During her tenure at Avon, Brown served Avon with skill and fidelity.

25. During her tenure at Avon, Avon routinely and annually praised Brown's performance.

26. During her tenure at Avon, Avon consistently rewarded Brown's exceptional performance by giving Brown annual raises, bonuses, promotions, and other financial rewards.

27. Avon was so pleased with Brown's performance that, in November of 2020, Avon promoted Brown to the executive position of Director of Operations, increased Brown's pay, and provided Brown a company car.

28. As Director of Operations, Brown continued to oversee Avon's Human Resources Department and also became involved in Avon's strategic operations; Brown's job description identified the Director of Operations position as a "strategic and hand-on senior leadership role."

29. In April of 2023, Auxo purchased Avon.

30. As part of Auxo's purchase of Avon, Auxo exercised a degree of control over Avon.

31. After Auxo's purchase of Avon, Auxo and Avon became Brown's joint and integrated employers.

32. After Auxo's purchase of Avon, Auxo codetermined one or more of Brown's essential terms and conditions of her employment at Avon, including assignment of Brown's work duties, supervision of Brown's performance of duties, Brown's working conditions relating to safety and health, and ultimately Brown's discharge.

33. Avon and Auxo also shared common management and ownership.

34. Shortly after Auxo's purchase of Avon, Auxo and Avon hired Defendant Thompson to act as Avon's interim CEO.

35. Despite being named as Avon's CEO, Defendant Thompson still took direction from Auxo, including Defendant Walsh.

36. Defendant Walsh also continued to play a role in the management and operations of Avon.

37. During all relevant times, Defendant Thompson and Defendant Walsh managed and supervised Brown.

38. Brown suffers from two distinct but interrelated disabilities—ADHD and anxiety—and has been medically-diagnosed with both ADHD and anxiety.

39. ADHD qualifies as a disability under the ADA and PDCRA.

40. Anxiety qualifies as a disability under the ADA and PDCRA.

41. Brown disclosed her ADHD and anxiety diagnoses to Defendants.

42. During one meeting that Thompson held late in the evening, Brown told Thompson that her medications were wearing off and she was having difficulty focusing during the meeting because of her ADHD.

43. Thompson laughed at Brown and said, "What, *you*?" in a mocking tone.

44. In November of 2023, Brown was experiencing worse-than-normal symptomology relating to her ADHD and anxiety.

45. In November of 2023, Brown filled out Avon paperwork requesting intermittent leave under the FMLA based on her worsening symptomology relating to her ADHD and anxiety.

46. Brown's medical provider certified Brown's need for the requested intermittent FMLA leave.

47. On November 16, 2023, Brown provided her completed FMLA paperwork to Defendant Thompson.

48. On Friday, November 17, 2023, Defendant Thompson acknowledged receipt of Brown's FMLA paperwork but did not indicate Brown could in fact take leave.

49. Brown worked that weekend—November 18 and 19, 2023.

50. On Tuesday, November 21, 2023, Defendants suddenly terminated Brown's employment via email without warning and without cause.

51. In Defendants' emailed termination letter, Defendants falsely claimed that they were eliminating Brown's position "effective immediately."

52. In reality, Defendants simply renamed Brown's position and assigned the position and its duties to other personnel.

53. Before terminating Brown, Defendants never wrote Brown up, reprimanded Brown, or otherwise disciplined Brown.

54. The decision to terminate Brown was made by Defendants jointly and collectively, including both Defendant Walsh and Defendant Thompson.

55. Defendants' termination of Brown—and Defendants' ostensible elimination of Brown's position—was pretextual, discriminatory, and retaliatory, as set forth herein.

56. Defendants are jointly and severally liable for their unlawful discrimination and retaliation against Brown, as well as for interfering with Brown's rights, including under the FMLA, the ADA, and the PDCRA.

57. At all relevant times, Defendant Walsh was an agent of Avon and Auxo.

58. At all relevant times, Defendant Thompson was an agent of Avon and Auxo.

59. Under the ADA, Avon and Auxo are vicariously liable, jointly and severally, for the illegal acts of Defendant Thompson and Defendant Walsh set forth herein.

60. Under the PDCRA, Avon and Auxo are vicariously liable, jointly and severally, for the illegal acts of Defendant Thompson and Defendant Walsh set forth herein.

61. Under the FMLA, Avon and Auxo are vicariously liable, jointly and severally, for the illegal acts of Defendant Thompson and Defendant Walsh set forth herein.

**COUNT I**
**FMLA Violations – Discrimination and Retaliation**

**[Against all Defendants]**

62. Brown incorporates her preceding allegations as if restated below.

63. At all relevant times, Brown was an eligible employee under the FMLA, namely in that her above ADHD and anxiety constituted serious health conditions.

64. At all relevant times, Defendants, individually and collectively, were Brown's eligible employer under the FMLA.

65. At all relevant times, Brown qualified for leave under the FMLA.

66. Brown engaged in protected activity under the FMLA by requesting FMLA-qualifying leave from Defendants.

67. Brown also engaged in protected activity under the FMLA by taking FMLA-qualifying leave from Defendants.

68. After Brown exercised her FMLA rights, Defendants took materially adverse employment against Brown: terminating Brown's employment.

69. Defendants terminated Brown, at least in part, because Brown engaged in protected activity under the FMLA and otherwise exercised her FMLA rights.

70. Brown exercising her FMLA rights was a determining factor in Defendants' decision to terminate Brown and preclude her from returning to work.

71. Defendants' termination of Brown violated the FMLA and Brown's rights thereunder.

72. Defendants terminated Brown in retaliation for Brown exercising her rights under the FMLA.

73. Defendants' termination of Brown was in bad faith and was a known and intentional violation of Brown's FMLA rights.

74. Defendants did not have reasonable grounds to believe their actions were compliant with the FMLA.

75. Brown is entitled to her lost wages, attorney's fees, an award of liquidated damages, interest thereon, and the other relief sought herein.

### COUNT II
### Violation of FMLA – Interference
### [Against all Defendants]

76. Brown incorporates her preceding allegations as if restated below.

77. Brown gave Defendants notice of her intent to take qualified FMLA leave.

78. Defendants then terminated Brown while she was on qualified FMLA.

79. Defendants' termination of Brown constitutes illegal interference with Brown's rights to request and to take leave under the FMLA.

80. Defendants' interference with Brown caused her harm, including loss of her job while on protected medical leave, loss of compensation, loss of employment benefits, and loss of other pecuniary and compensatory benefits.

81. Brown is entitled to her lost wages, attorney's fees, an award of liquidated damages, interest thereon, and the other relief sought herein.

## COUNT III
## ADA Violations – Discrimination, Retaliation, and Interference
## [Against Avon and Auxo]

82. Brown incorporates her preceding allegations as if restated below.

83. At all relevant times, Brown was an eligible employee under the ADA.

84. At all relevant times, Brown was an individual with a disability within the meaning of the ADA—namely, ADHD and anxiety.

85. At all relevant times, Brown's above disability involved a physical or mental impairment that substantially limited one or more of Brown's major life activities.

86. At all relevant times, Brown was qualified for her position as Director of Operations.

87. At all relevant times, Brown could perform the essential functions of the position, with or without a reasonable accommodation.

88. At all relevant times, Avon and Auxo, individually and collectively, were Brown's eligible employer under the ADA.

89. Defendants knew or had reason to know of Brown's disability.

90. Defendants terminated Brown, at least in part, because of her disability.

91. Defendants terminated Brown, at least in part, because she requested a reasonable accommodation for her disability, including medical leave.

92. Brown's above disability was a determining factor in Defendants' decision to terminate Brown and preclude her from returning to work.

93. Defendants' termination of Brown constitutes disability discrimination and retaliation in violation of the ADA.

94. Defendants' termination of Brown also constitutes interference with Brown's ADA rights, including the right to reasonable accommodations.

95. Defendants discriminated and retaliated against Brown, and interfered with Brown's ADA rights, with malice or with reckless indifference to Brown's federally-protected rights under the ADA.

96. As a direct and proximate result of Defendants' ADA discrimination, retaliation, and interference, Brown has suffered both economic and non-economic damages, including lost wages and earning capacity, lost employment benefits, loss of career opportunities, pecuniary losses, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, loss of self-esteem, anxiety, outrage, loss of personal and professional reputation, and other nonpecuniary losses.

97. Based on Defendants' unlawful discrimination, retaliation, and interference stated herein, Brown is entitled to actual, compensatory, non-economic, exemplary, special, and punitive damages, as well as attorney's fees and costs.

### COUNT IV
### Violation of PDCRA – Discrimination, Retaliation, and Interference
### [Against all Defendants]

98. Brown incorporates her preceding allegations as if restated below.

99. At all relevant times, Brown was an eligible employee under the PDCRA.

100. At all relevant times, Brown was an individual with a disability within the meaning of the PDCRA, namely ADHD and anxiety.

101. At all relevant times, Brown's above disability involved a physical or mental impairment that substantially limited one or more of Brown's major life activities.

102. Brown's disability was unrelated to her ability to perform the duties of her job as Director of Operations.

103. At all relevant times, Brown was qualified for her position as Director of Operations.

104. At all relevant times, Brown could perform the essential functions of the position, with or without a reasonable accommodation.

105. At all relevant times, Defendants, individually and collectively, were Brown's eligible employer under the PDCRA.

106. Defendants knew or had reason to know of Brown's disability.

107. Defendants terminated Brown, at least in part, because of her disability.

108. Defendants terminated Brown, at least in part, because she requested a reasonable accommodation for her disability, including medical leave.

109. Brown's above disability was a determining factor in Defendants' decision to terminate Brown and preclude her from returning to work.

110. Defendants' termination of Brown constitutes disability discrimination and retaliation in violation of the PDCRA.

111. Defendants' termination of Brown also constitutes interference with Brown's PDCRA rights, including the right to reasonable accommodations.

112. Defendants discriminated and retaliated against Brown, and interfered with Brown's PDCRA rights, with malice or with reckless indifference to Brown's federally-protected rights under the PDCRA.

113. Avon and Auxo's actions, including those of Defendant Thompson, Defendant Walsh, and their other agents, representatives, and employees, were intentional in their disregard for Brown's rights and sensibilities.

114. As a direct and proximate result of Defendants' PDCRA discrimination, retaliation, and interference, Brown has suffered both economic and non-economic damages, including lost wages and earning capacity, lost employment benefits, loss of career opportunities, pecuniary losses, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, loss of self-esteem, anxiety, outrage, loss of personal and professional reputation, and other nonpecuniary losses.

115. Based on Defendants' unlawful discrimination, retaliation, and interference stated herein, Brown is entitled to actual, compensatory, non-economic, exemplary, special, and punitive damages, as well as attorney's fees and costs.

## COUNT V
### Violation of ADA and PDCRA –
### Failure to Accommodate and Failure to Engage in Interactive Process
### [Against Avon and Auxo as to the ADA; against all Defendants as to the PDCRA]

116. Brown incorporates her preceding allegations as if restated below.

117. Both the ADA and the PDCRA require an employer to provide reasonable accommodation to qualified individuals with disabilities unless that accommodation would pose an undue hardship.

118. Failure to accommodate is a form of disability discrimination under both the ADA and PDCRA.

119. Brown was a qualified employee under both the ADA and PWCDA, with or without an accommodation, or with an alleged essential job requirement eliminated.

120. As set forth above, Brown was disabled under both the ADA and PWCDA.

121. At all relevant times, Avon and Auxo jointly employed Brown.

122. Brown's above request for medical leave constituted a proposal, and a request, for reasonable accommodation.

123. Accommodating Brown would not have imposed an undue hardship on Defendants.

124. After Brown made the proposal and request for reasonable accommodation, at no time thereafter did Defendants engage in an interactive process with Brown, let alone in good faith or to accommodate Brown.

125. Defendant Avon and Defendant Auxo's failure to engage in the interactive process, including through Defendants Walsh and Thompson, constitutes a separate and distinct violation of the ADA and PDCRA.

126. Defendant Thompson and Defendant Walsh's failure to engage in the interactive process constitutes a separate and distinct violation of PDCRA for which they are personally liable.

127. As a direct and proximate result of Defendants' failure to accommodate, Brown has suffered both economic and non-economic damages, including lost wages and earning capacity, lost employment benefits, loss of career opportunities, pecuniary losses, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, loss of self-esteem, anxiety, outrage, loss of personal and professional reputation, and other nonpecuniary losses.

128. Based on Defendants' failure to accommodate, Brown is entitled to actual, compensatory, non-economic, exemplary, special, and punitive damages, as well as attorney's fees and costs.

## COUNT VI
### CIVIL CONSPIRACY
### [Against all Defendants]

129. Brown incorporates her preceding allegations as if restated below.

130. Defendants illegally, maliciously, and wrongfully conspired with one another, pursuant to a common scheme and concerted action, to accomplish the following unlawful purposes:

    a.    Interference with Brown's FMLA rights;

    b.    Retaliation against Brown for exercising her FMLA rights;

  c. Discrimination against Brown because of Brown's disability;

  d. Interference with Brown's ADA and PDCRA rights;

  e. Retaliation against Brown because Brown exercised her rights under the ADA and PDCRA; and

  f. Failure to accommodate Brown despite Brown's disability and request for accommodation.

131. As a direct and proximate result of Defendants' conspiracy, Brown has suffered both economic and non-economic damages, including lost wages and earning capacity, lost employment benefits, loss of career opportunities, pecuniary losses, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, loss of self-esteem, anxiety, outrage, loss of personal and professional reputation, and other nonpecuniary losses.

132. Based on Defendants' civil conspiracy stated herein, Brown is entitled to actual, compensatory, non-economic, exemplary, special, and punitive damages, as well as attorney's fees and costs.

## REQUESTED RELIEF

**FOR THESE REASONS**, Plaintiff Melissa Brown respectfully requests that this Court:

A. Enter a money judgment in her favor and against Defendants, jointly and severally, in an amount that the trier of fact finds Plaintiff entitled to, including, without limitation, actual, treble, compensatory, exemplary, special, and punitive damages, plus interest, costs, expenses, and statutory attorney's fees under the FMLA, the ADA, and the PDCRA.

  B. As to Count I and Count II specifically, additionally award Brown 1) her lost or denied wages, salary, employment benefits, and other compensation denied or lost due to Defendants' violations of the FMLA; 2) interest on said wages, salary, and benefits, calculated at the prevailing rate; 3) liquidated damages equal to the aforementioned two sums; 4) reasonable attorney's fees, expert fees, and other costs of this action; and 5) equitable relief this Court deems wise; and

  C. Grant any other relief this Court deems wise and just.

            Respectfully submitted,

            /s/ R.J. Cronkhite
            R.J. Cronkhite (P78374)
            Cronkhite Counsel PLLC
            *Attorneys for Plaintiff*
            370 E. Maple Rd., Third Floor
            Birmingham, MI 48009
            T: (248) 220-6031
            F: (248) 256-2555
Dated: May 15, 2024      rj@cronkhitelaw.com

## **JURY DEMAND**

Plaintiff Melissa Brown, through her attorneys Cronkhite Counsel PLLC, hereby demands a jury trial for all causes of action so triable by jury.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ R.J. Cronkhite<br>R.J. Cronkhite (P78374)<br>Cronkhite Counsel PLLC<br>*Attorneys for Plaintiff*<br>370 E. Maple Rd., Third Floor<br>Birmingham, MI 48009<br>T: (248) 220-6031<br>F: (248) 256-2555 |
| Dated: May 15, 2024 | rj@cronkhitelaw.com |