UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA BROWN,

                Plaintiff,               Case No. 2:24-cv-11294

v.                                       Honorable Susan K. DeClercq
                                       United States District Judge

AVON MACHINING, LLC, et al.,

                Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' AVON MACHINING AND TODD THOMPSON'S
MOTION TO DISMISS (ECF No. 13), GRANTING IN PART AND
DENYING IN PART DEFENDANTS' AUXO INVESTMENT PARTNERS
AND BRANDON WALSH'S MOTION TO DISMISS (ECF No. 18), AND
DISMISSING WITHOUT PREJUDICE COUNTS IV AND V AGAINST
THOMPSON AND WALSH ONLY**

Five days after Plaintiff Melissa Brown requested "intermittent leave"
related to her ADHD and anxiety under the Family Medical Leave Act (FMLA),
she was fired by her employer, Avon Machining. In May 2024, she sued Avon and
her former supervisors there, alleging several discrimination, retaliation, and
interference claims under various federal and state statutes, as well as one civil-
conspiracy claim. Defendants now move to dismiss the civil-conspiracy claim and
the state disability-discrimination and failure-to-accommodate claims against
Brown's individual supervisors. As explained below, Brown's civil-conspiracy
claim may proceed, but her state disability-discrimination and failure-to-

accommodate claims against the individual supervisors will be dismissed without prejudice.

## I. BACKGROUND

In 2018, Defendant Avon Machining, LLC ("Avon"),[1] hired Plaintiff Melissa Brown to be its Human Resources Manager. *See* ECF No. 1 at PageID.4. At some point after she was hired—though it is not clear from Brown's Complaint when—Brown informed Avon that she had been diagnosed with ADHD and anxiety. *Id.* at PageID.6.

As HR Manager, Brown supervised Avon's entire HR department and received "routine[] and annual[] praise[]." *Id.* at PageID.5. In 2020, Avon promoted Brown to Director of Operations, an executive position which "increased Brown's pay, and provided [her] a company car." *Id.* In this role, Brown continued to supervise Avon's HR Department, but also took on additional responsibilities related to "Avon's strategic operations." *Id.*

---

[1] According to its website, Avon is a component-part supplier that "create[es] medium to large-sized, complex, high precision parts." *About*, AVON MACHINING, https://www.avonmachining.com/aboutus/ (last visited Jan. 7, 2025) [https://perma.cc/AEE6-JVJM]. Avon serves customers in construction, mining, trucking, agriculture, oil, gas, aerospace, and defense markets. *See Markets Served*, AVON MACHINING, https://www.avonmachining.com/markets-served/ (last visited Jan. 7, 2025) [https://perma.cc/9WHS-9ZVK].

In April 2023, Defendant Auxo Investment Partners, LLC ("Auxo")[2] purchased Avon and hired Defendant Todd Thompson "to act as Avon's interim CEO." *Id.* at PageID.5–6. Plaintiff alleges that Thompson and Defendant Brandon Walsh—Auxo's vice president—became Brown's supervisors at that point. *Id.* at PageID.6; *see also id.* at PageID.2.

Sometime after, Brown told Thompson during an evening meeting that "her medications were wearing off and she was having difficulty focusing" because of her ADHD. *Id.* at PageID.7. Brown alleges that, in response, "Thompson laughed at Brown and said, 'What, *you*?' in a mocking tone." *Id.*

In November 2023, "Brown was experiencing worse-than-normal symptomology related to her ADHD and anxiety." *Id.* So, on November 16, she requested "intermittent leave under the FMLA" by submitting to Thompson a completed FMLA request and a certification from her doctor. *Id.* Thompson "acknowledged receipt" of Brown's request the next day, but did not formally approve it, so Brown continued working. *Id.* On November 21, 2023—five days after Brown had submitted her FMLA request—Defendants fired Brown by email, stating that her position was being eliminated "effective immediately." *Id.* Brown,

---

[2] According to its website, Auxo is "an operationally[]focused private investment firm that specializes in growing founder- and family-owned industrial, manufacturing and business-services companies." *Who We Are*, AUXO INV. PARTNERS, https://auxopartners.com/ (last visited Jan 7, 2025) [https://perma.cc/9A3W-T3GN].

however, alleges that her position was not eliminated, but that Defendants "simply renamed Brown's position." *Id.* at PageID.8.

Five months after she was fired, Brown filed a charge of employment discrimination from the EEOC. *Id.* at PageID.3. A week later, she received a right-to-sue letter and filed this Complaint. *Id.* Brown brings six counts against Defendants, illustrated by the table below:

| Count | Claim | Defendants |
|-------|-------|------------|
| I | "FMLA Violations – Discrimination and Retaliation" | All Defendants |
| II | "Violation of FMLA – Interference | All Defendants |
| III | "ADA Violations – Discrimination, Retaliation, and Interference" | Avon and Auxo |
| IV | "Violation of PDCRA – Discrimination, Retaliation, and Interference" | All Defendants |
| V | "Violation of ADA and PDCRA – Failure to Accommodate and Failure to Engage in Interactive Process" | **ADA Claim:** Avon and Auxo  **PDCRA Claim:** All Defendants |
| VI | Civil Conspiracy | All Defendants |

*See* ECF No. 1 at PageID.8–17.

In response, Avon[3] and Thompson (collectively "the Avon Defendants") filed a motion to dismiss (1) Brown's civil-conspiracy claim (Count VI) against the Avon Defendants and (2) Brown's PDCRA claims (Counts IV and V) against

---

[3] Avon also filed a five-count counterclaim against Brown, alleging that she used Avon's credit card for personal purchases and has continued to retain company property and information which she refuses to return. *See generally* ECF No. 16.

- 4 -

Thompson. ECF No. 13. Auxo and Walsh (collectively "the Auxo Defendants") filed a similar motion to dismiss (1) Brown's civil-conspiracy claim (Count VI) against the Auxo Defendants and (2) Brown's PDCRA claims (Counts IV and V) against Walsh. ECF No. 18. P

## II. LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert*, 517 F.3d at 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). If not, then the court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## III. ANALYSIS

Taken together, Defendants' Motions seek to dismiss Brown's PDCRA claims against the individual defendants and her civil-conspiracy claim against all Defendants. *See* ECF Nos. 13; 18. Plaintiff opposes both requests. *See* ECF Nos. 20; 22.

### A. PDCRA Claims Against Individual Defendants (Counts IV and V)

Brown alleges that both Thompson and Walsh violated Michigan's Persons with Disabilities Civil Rights Act, MICH. COMP. LAWS § 37.1101 *et seq.*, by discriminating against her because of her disability, interfering with her request for reasonable accommodations, and retaliating against her for requesting the reasonable accommodation of intermittent leave (Count IV). ECF No. 1 at PageID.12–14. Brown further alleges that Thompson and Walsh again violated the PDCRA by failing to accommodate her disability and failing to engage in the interactive accommodation process (Count V). *Id.* at PageID.14–16. Both Thompson and Walsh argue that any claims against them arising under Michigan's PDCRA must be dismissed because that statute does not permit suits against individual supervisors. ECF Nos. 13; 18. Brown, on the other hand, argues that it does. ECF Nos. 20; 22.

### 1. Background of Michigan's PDCRA

Michigan's PDCRA was enacted "to ensure that all persons be accorded

equal opportunities to obtain employment, housing, and the utilization of public accommodations, services, and facilities." *Stevens v. Inland Waters, Inc.*, 559 N.W.2d 61, 63 (Mich. Ct. App. 1996) (citing *Adkerson v. MK-Ferguson Co.*, 477 N.W.2d 465 (Mich. Ct. App. 1991)). The PDCRA prohibits employers from discriminating against disabled people in hiring, promotion, discharge, and other terms and conditions of employment, and requires employers to accommodate the needs of disabled employees so long as the requested accommodation does not impose an undue hardship. *See* MICH. COMP. LAWS §§ 37.1202; 37.1210. The PDCRA also prohibits employers from retaliating against a person because that person opposed a violation of the PDCRA.[4] *See* MICH. COMP. LAWS § 37.1602.

## 2. Application of Michigan's PDCRA

Defendants argue that the PDCRA bars individual liability, so the claims against Thompson and Walsh must be dismissed. ECF Nos. 13; 18. But Brown responds that Michigan caselaw suggests that individuals *may* be liable under the PDCRA. ECF Nos. 20 at PageID.238–41; 22 at PageID.295–99.

The debate about whether Michigan's PDCRA permits claims against individual supervisors can be traced back to 2005, when the Michigan Supreme

---

[4]However, when analyzing the PDCRA, "Michigan courts have denied retaliation claims arising solely from requests for accommodation." *Anderson v. Detroit Transp. Corp.*, 435 F. Supp. 3d 783, 799 (E.D. Mich. 2020) (citing *Bachman v. Swan Harbour Assoc.*, 653 N.W.2d 415, 437–38 (Mich. Ct. App. 2002)).

Court determined that supervisors can be held individually liable under Michigan's Elliot-Larson Civil Rights Act. *See Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 857–61 (Mich. 2005). Importantly, *Elezovic* did not involve a PDCRA claim, nor did it mention the PDCRA—an entirely separate statutory scheme. Nevertheless, in the almost two decades since *Elezovic*, plaintiffs—like Brown here—have often argued that *Elezovic* permits individual liability under the PDCRA because the PDCRA's definition of an employer is "essentially the same" as the ELCRA's definition. ECF No. 22 at PageID.296; *see, e.g.*, *Anderson v. Detroit Transp. Corp.*, 435 F. Supp. 3d 783, 801 (E.D. Mich. 2020); *Mayes v. City of Oak Park*, No. 05-cv-74386, 2007 WL 9751967 (E.D. Mich. Sept. 28, 2007), *aff'd*, 285 F. App'x 261 (6th Cir. 2008).; *Down v. Ann Arbor Pub. Schs.*, No. 17-cv-13456, 2018 WL 6649722 (E.D. Mich. Dec. 19, 2018); *Schuette v. Rand*, No. 18-cv-10497, 2020 WL 7664775 (E.D. Mich. Dec. 23, 2020); *Beny v. Univ. of Mich. Bd. of Regents*, No. 22-cv-12021, 2023 WL 4409107 (E.D. Mich. July 7, 2023).

Unfortunately, however, Michigan state courts have not weighed in on the issue, and there is no clear resolution within this district. *See Beny*, 2023 WL 4409107 at *7. At least one judge in this district has suggested that *Elezovic*'s holding *does* extend to PDCRA claims and proceeded to evaluate the merits of a PDCRA claim against an individual supervisor defendant. *See Mayes*, 2007 WL 9751967, at *9 n.18, *17. But several other judges in this district have reached the

opposite conclusion, reasoning that *Elezovic*'s holding should be limited to the ELCRA. This is because Michigan courts have consistently recognized that the ELCRA is *not* completely analogous to its federal counterpart, Title VII, which prohibits individual liability. *See Schuette*, 2020 WL 7664775, at *5–6; *Down*, 2018 WL 6649722, at *4. In contrast, Michigan courts have noted that the PDCRA *does* mirror its federal counterpart, the ADA, which prohibits individual liability. *See Schuette*, 2020 WL 7664775, at *6 (citing *Chiles v. Mach. Shop, Inc.*, 606 N.W.2d 398, 405 (Mich. Ct. App. 1999)); *Down*, 2018 WL 6649722, at *4.

Although the parties make persuasive arguments, each essentially asks this Court to undertake "a leap in interpretation" of either the Michigan Supreme Court's caselaw or of Michigan's PDCRA. *Anderson*, 435 F. Supp. 3d at 801.

So, we arrive at what appears to be an impasse: "a heavily contested [state-law] issue on which Michigan courts have not ruled" and on which federal courts have reached different conclusions. *Id.* Luckily, two judges in this district have already marked an appropriate detour: declining to exercise supplemental jurisdiction over Brown's PDCRA claims against Thompson and Walsh. *See id.*; *Beny*, 2023 WL 4409107, at *8. Indeed, as Judge Cleland reasoned in 2020, this precise dispute about supervisor liability under Michigan's PDCRA is "exactly the type of claim that is best reserved for review by the Michigan courts themselves, who have greater experience and interest in clarifying Michigan law." *Anderson*,

435 F. Supp. 3d at 801; *see also Weser v. Goodson*, 965 F.3d 507, 519 (6th Cir. 2020) (noting district courts should decline to exercise supplemental jurisdiction over novel issues of state law that have never been squarely addressed by state courts, when both parties plausibly argue in favor of their respective positions); 28 U.S.C. § 1367(c)(1).

Accordingly, this Court will decline to continue exercising supplemental jurisdiction over Counts IV and V against Defendants Thompson and Walsh, and those counts will be dismissed without prejudice as to those Defendants only.

## B. Civil-Conspiracy Claim Against All Defendants (Count VI)

Brown also alleges that all four Defendants "illegally, maliciously, and wrongfully conspired with one another" to discriminate against her, interfere with her rights under the FMLA, ADA, and PDCRA, and retaliate against her for exercising such rights. ECF No. 1 at PageID.16–17. Defendants all argue that this claim must be dismissed under the intracorporate conspiracy doctrine. ECF Nos. 13; 18.

### 1. Background of the Intracorporate Conspiracy Doctrine

The intracorporate conspiracy doctrine dictates that "if *all* defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019) (emphasis added). Michigan state courts have adopted this doctrine. *Salser v.*

- 10 -

*Dyncorp Int'l Inc.*, 170 F. Supp. 3d 999, 1010 (E.D. Mich. 2016) (quoting *Tropf v. Holzman & Holzman*, No. 257019, 2006 WL 120377, at *1–2 (Mich. Ct. App. Jan. 17, 2006)).

This doctrine makes sense. By definition, a conspiracy requires an agreement between two or more people. *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991). Indeed, "[j]ust as it is not possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of a corporation and its agents to conspire with itself." *Innovative Architectural Planners, Inc. v. Ohio Dep't of Admin. Servs.*, 239 N.E.3d 942, 955 (Ohio Ct. App. 2024) (citing *Bays v. Canty*, 330 F. App'x 594, 594 (6th Cir. 2009)).

## 2. Application of the Intracorporate Conspiracy Doctrine

Defendants here argue that Brown's conspiracy claim against all four Defendants—Avon, Auxo, Thompson, and Walsh—is barred under the intracorporate conspiracy doctrine in light of Brown's allegation that Avon and Auxo acted as her "joint employer."[5] ECF Nos. 13; 18; *see also* ECF No. 1 at PageID.5 (alleging that beginning in April 2023, Avon and Auxo acted as Brown's "joint and integrated" employer). Defendants argue that two corporations that

---

[5] Notably, in its answer to Brown's Complaint, Auxo claimed it "did not employ Brown and did not serve as her joint and/or integrated employer." ECF No. 17 at PageID.198.

jointly employ someone do not become the "same entity," thus the intracorporate conspiracy doctrine applies. ECF Nos. 13 at PageID.64–66; 18 at PageID.216–19. Brown responds that although she has alleged Avon and Auxo acted as her joint employers, they remain separate legal entities, and the fact that they have different legal counsel supports this conclusion. ECF Nos. 20 at PageID.235–36; 22 at 289–90.

It is well settled under Michigan law that "separate corporate entities will be respected . . . absent some abuse of corporate form." *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (Mich. 1995) (citing *Wells v. Firestone*, 364 N.W.2d 670 (Mich. 1984)). And Brown has not alleged that Avon and Auxo abused their corporate forms such that this Court should consider them to be the same entity.[6] *See generally* ECF No. 1. True, under certain circumstances, two corporate entities that

---

[6] There is some caselaw in this district holding that distinct divisions of municipal governments are the same entity as the municipality, such that the intracorporate conspiracy doctrine bars claims alleging that the municipal division conspired with the municipality. *See, e.g.*, *Desandre v. Cnty. of Oscoda,* No. 20-cv-12209, 2021 WL 3828588, at *7 (E.D. Mich. Aug. 27, 2021); *Shefa, LLC v. City of Southfield*, No. 22-cv-11038, 2021 WL 4440401, at *7 (E.D. Mich. Sept. 28, 2021). But the reasoning in those cases rely on details that are unique to municipal entities, and do not cleanly apply to private corporate entities. For example, in *Desandre*, the court reasoned that under Michigan law, a "county sheriff's department[] and [a] county prosecutor's office[] are not legal entities capable of being sued," because "the law does not recognize either one as an independent legal entity." 2021 WL 3828588, at *7. Similarly, in *Shefa*, the court determined that a municipality and one of its divisions were the same entity because the municipality was authorized by state law to create *and* control the division. 2021 WL 4440401, at *7. Neither of these circumstances are analogous to the facts alleged by Brown here.

jointly employ a plaintiff might be considered the same entity. But such a conclusion "would require factual development that is not proper on a motion to dismiss." *Stryker Corp. v. Ridgeway*, No. 1:13-CV-1066, 2015 WL 5308038, at *17 (W.D. Mich. Sept. 10, 2015) (declining to apply the intracorporate conspiracy doctrine at the motion-to-dismiss stage to preclude plaintiff from bringing a civil-conspiracy claim against parent corporation and its subsidiary). Accordingly, Defendants' motions for partial dismissal, ECF Nos. 13; 18, will be denied in part to the extent they seek dismissal of Count VI.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that:

1. Defendants Avon Machining and Todd Thompson's Motion to Dismiss, ECF No. 13, is **GRANTED IN PART** to the extent that Counts IV and V as alleged against Thompson will be dismissed without prejudice;

2. Defendants Avon Machining and Todd Thompson's Motion to Dismiss, ECF No. 13, is **DENIED IN PART** to the extent it seeks dismissal of Count VI.

3. Defendants Auxo Investment Partners and Brandon Walsh's Motion to Dismiss, ECF No. 18, is **GRANTED IN PART** to the extent that Counts IV and V as alleged against Walsh will be dismissed without prejudice;

4. Defendants Auxo Investment Partners and Brandon Walsh's Motion to Dismiss, ECF No. 18, is **DENIED IN PART** to the extent it seeks dismissal of Count VI.

5. Count IV is **DISMISSED WITHOUT PREJUDICE** as alleged against Defendants Thompson and Walsh; and

- 13 -

6. Count V is **DISMISSED WITHOUT PREJUDICE** as alleged against Defendants Thompson and Walsh.

**This is not a final order and does not close the above-captioned case.**

/s/Susan K. DeClercq

SUSAN K. DeCLERCQ

United States District Judge

Dated: January 17, 2025